# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHARLIE R. COLLINS, Jr.,** | ) | |
| Plaintiff | ) | Civil Action No. 2:21cv00014 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social** | ) | By:  PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Charlie R. Collins, Jr., ("Collins"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Collins protectively filed applications for DIB and SSI on November 16, 2018, alleging disability as of January 31, 2017, due to lack of cartilage in his feet; low back, knee and hip problems; anxiety; some mental issues; and lack of ability to read and write well. (Record, ("R."), at 15, 237-42, 269, 319, 331.) The claims were denied initially and on reconsideration. (R. at 164-66, 171-73, 177-92.) Collins requested a hearing before an administrative law judge, ("ALJ"). (R. at 193-94.) A hearing was held on October 2, 2020, at which Collins was represented by counsel. (R. at 47-85.)

By decision dated October 14, 2020, the ALJ denied Collins's claims. (R. at 15-39.) The ALJ found Collins met the nondisability insured status requirements of the Act for DIB purposes through March 31, 2022. (R. at 17.) The ALJ found Collins had not engaged in substantial gainful activity since January 31, 2017, the alleged onset date.[2] (R. at 17.) The ALJ determined Collins had severe impairments, namely foot impairments, including clavus deformity, plantar fibromatosis, tendonitis and bursitis; obesity; chronic bronchitis; sleep apnea; Hepatitis C; lumbago; substance use disorder; post-traumatic stress disorder, ("PTSD"); history of learning disability; depression; and anxiety, but he found

---

[2] The ALJ noted that Collins worked after the alleged disability onset date, but this work did not rise to the level of substantial gainful activity. (R. at 17-18.)

Collins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

The ALJ found Collins had the residual functional capacity to perform light[3] work, except he could understand, remember and carry out instructions and tasks limited to those that could be learned in 30 days or less; he could only read basic words and instructions; he could have occasional decision-making and changes in the work setting; and he could have occasional interaction with the public, co-workers and supervisors.[4] (R. at 23.) The ALJ found Collins was unable to perform any of his past relevant work. (R. at 37.) Based on Collins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Collins could perform, including the jobs of a garment folder, an addressing clerk and an assembler. (R. at 37-38, 78-79.) Thus, the ALJ concluded Collins was not under a disability as defined by the Act, and he was not eligible for SSI and DIB benefits. (R. at 38-39.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2021).

After the ALJ issued his decision, Collins pursued his administrative appeals, (R. at 232-33, 367-68), but the Appeals Council denied his request for review. (R. at 1-5.) Collins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2021). This case is before this court on Collins's

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2021).

[4] The ALJ also placed several limitations on Collins's physical work-related abilities; however, since Collins's argument centers around his mental limitations, the court will discuss only the limitations related to his mental residual functional capacity. (R. at 23.)

motion for summary judgment filed October 4, 2021, and the Commissioner's motion for summary judgment filed November 3, 2021.

## II. Facts

Collins was born in 1981, (R. at 237), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education and vocational training in masonry. (R. at 270.) Collins has past relevant work as a maintenance worker for the Town of Lebanon and as a construction worker. (R. at 53-54, 78.) Collins testified that he was enrolled in special education classes for reading and writing. (R. at 53.) He stated he did not read and write "very well." (R. at 58.) Collins stated he required help with filling out job applications and forms and when he took his driver's license exam, he had to have it read to him. (R. at 58-59.) He stated his supervisor at the Town of Lebanon accused him of being intoxicated on the job site and made him resign from his job. (R. at 53, 722.) Collins stated that, although he passed a drug test, he was accused of "being high on the job." (R. at 722.) He stated he had problems getting along with his supervisors and co-workers. (R. at 60.) Collins stated he experienced anxiety attacks. (R. at 67-68.) He stated he experienced nightmares and night terrors up to four times a week because of being sexually abused as a child. (R. at 69, 71.) Collins stated he had difficulty being around his children because it triggered memories of his sexual abuse. (R. at 71-72.)

In rendering his decision, the ALJ reviewed records from Russell County Public Schools; Leslie E. Montgomery, Ph.D., a state agency psychologist; Stephen P. Saxby, Ph.D., a state agency psychologist; Watauga Medical Group; Wellmont Medical Associates; Cumberland Mountain Community Services,

("Cumberland Mountain"); Dr. Seth Thompson, M.D.; Katherine Burner Barnett, L.C.S.W., a licensed clinical social worker; Leigh A. Ford, Ph.D., a licensed psychologist; Dr. Monika E. Pelly, M.D., a psychiatrist; Crossroads Treatment Centers, ("Crossroads"); and William A. Davis Clinic, ("Clinic").

On July 9, 1990, Collins underwent an evaluation by a school psychologist for Russell County Public School to determine if he was eligible for special education services based on his reading difficulties. (R. at 370-72.) The Wechsler Intelligence Scale For Children - Revised, ("WISC-R"), was administered, and Collins obtained a full-scale IQ score of 90. (R. at 371.) Collins performed at the kindergarten eighth-month level in reading, at the advanced second grade level in math and at the first-grade level in written language. (R. at 372.)

In March and April 2018, Collins actively participated in group therapy at Cumberland Mountain for his drug addiction.[5] (R. at 656-68.) He was fully oriented, and his behavior and affect were appropriate. (R. at 660-61, 663.)

From March 2018 through September 2018, Collins received outpatient Suboxone treatment for opioid use disorder at Watauga Medical Group. (R. at 549-644.) Collins reported stressors, such as his girlfriend losing custody of her children due to going to jail on drug charges, his car "blew up" and possible eviction. (R. at 556, 558-59, 633, 636.) Collins reported he was doing well without relapses, staying busy working and he stated his medication was working well, until he relapsed in September 2018 after using methamphetamine. (R. at 595, 598, 605, 612, 619, 623, 627, 629-30, 639.) Collins's examinations showed he was cooperative; he had normal speech; his mood and affect were normal; he made

---

[5] Collins participated in three group sessions and failed to attend five sessions.

appropriate eye contact; he exhibited no focal deficits or psychosis; he responded appropriately; and he was interactive.[6] (R. at 550, 554, 556, 559, 561, 564, 588-89, 595-96, 598-99, 606, 612, 617, 619, 627, 629-30, 633, 639, 642.)

On April 30, 2019, Leslie E. Montgomery, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Collins's substance addiction disorder was severe and his depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders were nonsevere. (R. at 94-95.) She opined Collins had mild limitations on his ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage himself. (R. at 94.)

From May 2019 through September 2020, Collins underwent monthly psychotherapy and case management for polysubstance abuse/dependence with medication assisted treatment at Crossroads. (R. at 876-917, 939-43, 985-87.) During this time, Dr. Seth Thompson, M.D., noted Collins was stable with good, sustained recovery. (R. at 876, 879, 881, 883, 888, 891, 897, 900, 902, 905, 909, 911.) Dr. Thompson reported Collins was fully oriented; his hygiene and grooming were good; his mood was depressed with a congruent affect; he made good eye contact; his thought process and content were organized, logical, linear and goal-directed; his insight, judgment and impulse control were normal; and he had no suicidal or homicidal ideations. (R. at 878-79, 881, 887, 899, 904, 907, 913, 916.) Collins reported he was doing well and staying active with work/school/family,

---

[6] On September 4, 2018, Collins was visibly anxious, shaking and breathing heavy due to increased anxiety because his wife was going to jail, and he would be left to work full time and take care of the children. (R. at 636.) By September 21, 2018, Collins reported his anxiety was improving and he was trying to work full time and take care of four kids. (R. at 642.)

and he was alert and cooperative.[7] (R. at 876, 879, 881, 883, 887, 891, 894, 897, 899-900, 902, 905, 909, 911, 914, 939, 941, 985.) Dr. Thompson diagnosed opioid dependence, uncomplicated; PTSD, chronic; major depressive disorder, recurrent, moderate; and insomnia, unspecified. (R. at 880.)

From May 2019 through September 2020, Collins participated in counseling at the Clinic to address PTSD, depression and opioid dependence. Collins reported anger, irritability, difficulty sleeping, anxiety, difficulty focusing and dealing with groups of people, crying spells, intrusive thoughts of childhood trauma[8] and isolation. (R. at 709, 723, 780, 790, 817, 951, 976, 980.) On May 15, 2019, Anita Renee D. Coe, N.P.-C., a certified nurse practitioner with the Clinic, saw Collins for chronic pain. (R. at 729-40.) Collins denied symptoms of depression, anxiety and change in sleep pattern. (R. at 732.) He also denied joint pain and stiffness, (R. at 731), and his musculoskeletal examination was normal. (R. at 732.) Coe reported Collins was unkempt with a strong odor of grass and gasoline; he had appropriate judgment and good insight; he was fully oriented; his recent and remote memory were intact; and his mood was euthymic with an appropriate affect. (R. at 732.) Coe diagnosed PTSD. (R. at 733.) In May 2019, Collins reported Seroquel[9] helped him sleep. (R. at 723.) On May 28 and June 17, 2019,

---

[7] In June 2020, Collins admitted he relapsed and used clonazepam after he had an argument with his wife. (R. at 914.) He reported he continued to struggle with severe anxiety. (R. at 914.) Dr. Thompson's examination findings remained unchanged. (R. at 916.) At follow-up visits in July, August and September 2020, Collins denied further relapses. (R. at 939, 941, 985.)

[8] Collins identified multiple traumas, including being molested as a child and witnessing his mother be beaten by her second husband. (R. at 723-24.) He also stated his first wife would "pull knives" on him. (R. at 723.)

[9] On July 8, 2019, Collins stated he had not taken Seroquel in two to three weeks because "my pharmacy doesn't have it." (R. at 780.) He stated it did not help him sleep at night and made him feel sleepy during the day. (R. at 780.) Barnette's examination findings remained unchanged. (R. at 781-82.)

Katherine Barnette, L.C.S.W., a licensed clinical social worker with the Clinic, reported Collins had mild body odor; he had a depressed, anxious and irritable mood with congruent affect; he made normal eye contact; his insight was limited; his judgment was normal; his speech was normal; he was fully oriented; and he exhibited no hallucinations, delusions or paranoia. (R. at 711, 725-26.) She diagnosed major depressive disorder, single episode, moderate; opioid dependence, uncomplicated; PTSD, chronic; and anxiety disorder. (R. at 712, 726.)

On May 21, 2019, Dr. Thompson completed a medical evaluation for the Wise County Department of Social Services. (R. at 706-07.) Dr. Thompson opined that Collins could not work for 12 months due to PTSD and recommended he apply for disability benefits. (R. at 706-07.) Dr. Thompson diagnosed PTSD and depression/anxiety and found that Collins's condition did not hinder his ability to care for his children. (R. at 707.)

On July 30, 2019, Barnette completed a mental assessment, finding Collins had mild limitations in his ability to understand, remember and carry out simple job instructions. (R. at 753-55.) She found Collins had a satisfactory ability to follow work rules, to function independently and to maintain personal appearance. (R. at 753-54.) Barnette opined Collins had serious limitations, resulting in an unsatisfactory work performance, in his ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to deal with work stresses; to maintain attention/concentration; to understand, remember and carry out complex and detailed job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 753-54.) She found Collins would be absent from work more than two days a month. (R. at 755.)

On August 12, 2019, Collins saw Barnett and reported his living situation had been stressful because he was not able to stay with his wife[10] due to a disagreement with his mother-in-law. (R. at 785.) He stated he was not taking Seroquel because his pharmacy continued to tell him they did not have it. (R. at 785.) Barnett's examination findings remained unchanged. (R. at 787.)

On September 27, 2019, Leigh A. Ford, Ph.D., a licensed psychologist, evaluated Collins at the request of Disability Determination Services. (R. at 756-60.) Collins reported difficulty sleeping due to restlessness and pain. (R. at 757.) He reported he managed grooming and hygiene tasks independently; he could perform light household chores; he enjoyed watching television and movies; and he visited with his sister. (R. at 757.) Ford reported Collins's grooming and hygiene were appropriate; he was fully oriented; he maintained eye contact; his facial expressions were tense; he was cooperative; his affect was variable with a somewhat pessimistic mood; he had normal speech; his thought content was appropriate and consistent with mood; he did not experience hallucinations or demonstrate any signs of delusional behavior; his organization of thought was logical and goal-oriented; he had good judgment and reality testing; he had some gaps in insight; and his coping skills appeared to be "somewhat overwhelmed." (R. at 757-58.) Collins scored 24/30 on the Montreal Cognitive Assessment, ("MoCA").[11] (R. at 758.) Ford diagnosed generalized anxiety disorder with panic attacks; unspecified depressive disorder; and unspecified opioid use disorder, on

---

[10] Collins reported that his wife was living with her mother because of her drug charges. (R. at 803.) He stated he lived in an apartment with his son and stepdaughter. (R. at 803.)

[11] The MoCA test is a series of questions designed to detect problems with cognition. The individual is considered to have normal cognitive abilities with a score of 26 to 30 points. *See* https://www.healthgrades.com/right-care/dementia/the-moca-montreal-cognitive-assessment-test-for-dementia (last visited Aug. 5, 2022).

maintenance therapy. (R. at 759.) Ford opined Collins had no limitations in his ability to understand, remember and carry out simple and complex repetitive tasks; and he had moderate limitations on his ability to tolerate stress and pressures of day-to-day employment, to sustain attention and concentration towards simple repetitive tasks and to respond appropriately to supervision, co-workers and pressures. (R. at 759.)

On October 15, 2019, Stephen P. Saxby, Ph.D., a state agency psychologist, completed a PRTF, finding Collins's substance addiction disorder was nonsevere and his depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; and trauma and stressor related disorders were severe. (R. at 129-30.) He opined Collins had moderate limitations on his ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage himself. (R. at 130.) Saxby found Collins could perform simple, unskilled work with limited public interaction. (R. at 130.)

That same day, Saxby completed a mental assessment, finding Collins had moderate[12] limitations in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond

---

[12] The regulations define "moderate limitations" as an individual's ability to function independently, appropriately, effectively and on a sustained basis as fair. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (2021).

appropriately to criticism from supervisors; and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 134-36.) Saxby stated Collins's work-related mental abilities were, otherwise, not significantly limited. (R. at 134-35.) Saxby stated Collins could understand, retain and carry out very short and simple job instructions, perform one- and two-step tasks and make simple decisions. (R. at 134-35.)

On October 22, 2019, Collins saw Barnett and reported he got sick to his stomach after his sister and her five children came to his house to visit, and he felt like he was having a panic attack. (R. at 790.) He stated he struggled to cope with anxiety. (R. at 790.) Barnett's examination findings remained unchanged. (R. at 791-92.) On October 29, 2019, Collins saw Emily C. Steffey-Stacy, P.M.H.N.P., a psychiatric mental health nurse practitioner with the Clinic, for depression, anxiety and being very overprotective of his children. (R. at 803.) He stated, "[i]f I could get a job where I could sit and do but there ain't no jobs like this." (R. at 803.) Collins was well-groomed and dressed appropriately; he had a depressed, anxious mood and congruent affect; his eye contact, insight, judgment and speech were normal; he had no suicidal or homicidal ideations; he was fully oriented; and he had no hallucinations, paranoia or delusions. (R. at 805.)

On November 12, 2019, Steffey-Stacy saw Collins for mental health follow up and medication management. (R. at 795.) Steffey-Stacy reported Collins's speech was regular; his thought process was intact; he denied suicidal and homicidal ideations and hallucinations; he had appropriate judgment and fair insight; he was fully oriented; his recent and remote memory were intact; his attention span and concentration were good; his mood was anxious and depressed; and he had an interactive affect. (R. at 799-800.) She diagnosed PTSD, chronic;

opioid dependence, in remission; major depressive disorder, recurrent, moderate; and generalized anxiety disorder. (R. at 800.) On November 19, 2019, Barnett reported Collins had minimal eye contact, limited insight and passive suicidal ideations with no plan or intent. (R. at 814.) On December 17, 2019, Collins saw Barnett and stated his sister was pregnant and scheduled to be induced later that week and she asked him to watch her six kids while she was hospitalized. (R. at 817.) Collins reported he felt overwhelmed by this request and did not believe he would be able to do it. (R. at 817.) He reported he was not sleeping well; he had difficulty focusing; and he was struggling with depression, anxiety and trauma symptoms that negatively impacted his overall functioning. (R. at 817.) Collins reported he stopped taking his psychiatric medications. (R. at 817.) Barnett's examination findings remained unchanged, except Collins had limited eye contact and insight. (R. at 819.)

On January 20, 2020, Barnett reported Collins had passive suicidal ideations with no intent or plan. (R. at 826-27.) On February 10, 2020, Collins saw Barnett and reported Zoloft helped with anger outbursts and panic attacks, but he still had depression, trauma triggers and anxiety that significantly impacted his overall functioning. (R. at 831.) Barnett's examination findings remained unchanged. (R. at 832-33.)

On July 29, 2020, Collins saw Barnett and reported increased depression; financial stressors; difficulty finding words and focusing; difficulty dealing with groups of people; and increased crying spells. (R. at 959.) He stated he had a "break down" the last time he was at the Suboxone clinic and was embarrassed by his actions. (R. at 959.) There was no change in his examination findings. (R. at 961.) In August 2020, Collins reported multiple stressors, including his son's anger

outbursts, which triggered his agitation and caused his "mind to go numb;" and not being able to be around family members, which caused marital problems. (R. at 951, 956.) He also stated he got into an argument at his attorney's office. (R. at 956.) Barnett's examination findings remained unchanged, except Collins had mild visual hallucinations and his speech was confused at times. (R. at 949, 952, 955.)

On September 1, 2020, Barnette completed a mental assessment, finding Collins had serious limitations, resulting in an unsatisfactory work performance, in his ability to make occupational, performance and personal/social adjustments, except he had a satisfactory ability to understand, remember and carry out simple job instructions and to maintain personal appearance; and no useful ability to deal with work stresses and to understand, remember and carry out complex job instructions. (R. at 963-65.) She found Collins would be absent from work more than two days a month. (R. at 965.)

On September 2, 2020, Collins saw Barnett and reported he was trying to spend more time with his family, but stated it was very difficult because he would get agitated and have to leave the room. (R. at 980.) He reported seeing shadows and feeling worried and was easily startled. (R. at 980.) Barnett's examination findings remained unchanged, except she again noted mild visual hallucinations. (R. at 981-82.) On September 8, 2020, Collins reported he was having more intrusive thoughts of childhood trauma. (R. at 976.) Barnett's examination findings remained unchanged, except no hallucinations were noted. (R. at 977-78.)

On September 16, 2020, Dr. Monika E. Pelly, M.D., a psychiatrist, evaluated Collins for depression, anxiety and medication management. (R. at 988.) Collins reported anxiety, sadness, mood swings, racing thoughts, insomnia, irritability and

-13-

seeing things that were not there. (R. at 988.) Collins was cooperative; he was fully oriented; he had good eye contact; his speech had regular rate and rhythm; his mood was "anxious a little;" his affect was restricted; his judgment and insight were fair; his attention span and concentration were normal; his thought processes were organized with no thought blocking; his had no delusions or hallucinations; his abstract reasoning and associations were intact; and his recent and remote memory were intact. (R. at 989-90.) Dr. Pelly diagnosed bipolar I disorder, manic, unstable; generalized anxiety disorder; and PTSD. (R. at 990.)

On September 22, 2020, Dr. Thompson completed a mental assessment, finding Collins had no useful ability to make occupational, performance and personal/social adjustments, except he had a satisfactory ability to maintain personal appearance and serious limitations, resulting in an unsatisfactory work performance, in his ability to follow work rules; to interact with supervisors; to understand, remember and carry out simple job instructions; to behave in an emotionally stable manner; and to demonstrate reliability. (R. at 991-93.) He found Collins would be absent from work more than two days a month. (R. at 993.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2021). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§

404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Collins argues the ALJ erred by improperly determining his mental residual functional capacity by rejecting the opinions of Dr. Thompson and Barnett. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief") at 5-6.) Collins contends the ALJ rejected these opinions without acknowledging the consistency of the imposed limitations between the two providers. (Plaintiff's Brief at 6.)

Because this matter involves a claim filed after March 27, 2017, a new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. For applications filed on or after March 27, 2017, the Social Security Administration, ("SSA"), has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan.

18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). Under the new regulations, ALJs no longer are required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2021) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[13]

Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case record based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2021).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ

---

[13] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2021). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5) (2021).

must address those two factors in evaluating the persuasiveness of medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2021).[14] In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The new regulations also alter the way the ALJ discusses the medical opinions or findings in the text of the decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he considered each of them. Instead, when articulating his finding about whether an opinion is persuasive, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. *See* 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3) (2021).

---

[14] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

When the ALJ finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must consider the most persuasive factors, including the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(5), 416.920c(b)(3), (c)(3)-(5).

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2021). The ALJ found Collins had the residual functional capacity to perform light work, except he could understand, remember and carry out instructions and tasks limited to those that could be learned in 30 days or less; he could only read basic words and instructions; he could have occasional decision-making and changes in the work setting; and he could have occasional interaction with the public, co-workers and supervisors. (R. at 23.)

In making his residual functional capacity finding, the ALJ found the opinions of Barnett and Dr. Thompson "unpersuasive" because they were more restrictive than warranted by the psychiatric record. (R. at 31-33.) In May 2019, Dr. Thompson provided an evaluation for the Wise County Department of Social Services finding Collins would not be able to participate in employment and training activities at any time for 12 months and recommended Collins apply for disability. (R. at 706-07.) *See* 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i) (2021) (stating that statements concerning disability are neither inherently valuable nor persuasive because the disability determination is reserved to the Commissioner). The ALJ found this opinion "unpersuasive" because it did not

provide a residual functional capacity or detailed limitations. (R. at 33.) In addition, the ALJ found Dr. Thompson treated Collins for his opioid addiction and not his other mental and physical issues. (R. at 33.)

Both Dr. Thompson and Barnett opined that Collins had serious limitations to no useful ability to make occupational, performance and personal/social adjustments. (R. at 753-55, 963-64, 991-93.) The ALJ found these assessments "unpersuasive" stating Collins's symptoms improved with medication; he had no psychiatric admissions during the period under consideration; his opioid dependence was controlled with Suboxone and counseling; he performed a wide array of activities, including caring for his children and doing sheetrock work; his mental status examinations showed anxious, irritable or depressed mood and affect with limited insight and passive suicidal ideation; and his mental status examinations showed only mild issues. (R. at 31-33.) Both Dr. Thompson and Barnett's examination findings revealed Collins was fully oriented; his hygiene and grooming were good; his mood was depressed and anxious with a congruent affect; he made good eye contact; his thought process and content were organized, logical, linear and goal-directed; his insight ranged from normal to limited; his judgment and impulse control were normal; he was alert and cooperative; his speech was normal; his recent and remote memory were intact; and his attention and concentration were good.

The ALJ stated he found the opinions of Ford and state agency psychologist, Saxby, "persuasive," because they were generally consistent with and supported by the mental evidence of record. (R. at 30-32.) Ford's examination findings were consistent with those of Dr. Thompson and Barnett and the MoCA test showed Collins had normal cognitive abilities. (R. at 757-58.) Ford opined Collins had

-19-

moderate limitations in his ability to tolerate stress and pressures of day-to-day employment, to sustain attention and concentration towards simple repetitive tasks and to respond appropriately to supervision, co-workers and pressures. (R. at 759.) Saxby opined Collins could understand, retain and carry out very short and simple job instructions, perform one- and two-step tasks and make simple decisions. (R. at 134-35.) Collins often related his anxiety and depression to stressors, such as marital problems, financial difficulties and family relationships. (R. at 785, 951, 956.) The ALJ accounted for these limitations by limiting Collins to work that could be learned in 30 days or less with only occasional decision-making and changes in the customary workplace setting and occasional interaction with the public, co-workers and supervisors. (R. at 23.)

In addition, in January 2020, Collins reported Zoloft decreased his anger and panic attacks and he often denied depression, anxiety and changes in his sleep pattern when seeing his other health care providers. (R. at 732, 831, 836, 847, 852, 969.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). In September 2020, psychiatrist Pelly reported Collins's mental status examination findings were generally within normal limits, other than an anxious mood and restricted affect. (R. at 989-90.) Collins stated, "[i]f I could get a job where I could sit and do but there ain't no jobs like this." (R. at 803.) While in Suboxone treatment, Collins routinely reported he was doing well and staying busy. (R. at 595, 598, 605, 612, 619, 623, 627, 629-30.) As noted by the ALJ, Collins was able to handle the mental demands of parenting his children alone when his wife went to jail for over six months; he had no problems with independently making plans and setting goals, such as caring for his sister's children while she was hospitalized

for a procedure; he performed sheetrock work in 2017; and he could perform normal necessary household activities. (R. at 20, 22.)

Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his mental residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2.  Substantial evidence exists in the record to support the ALJ's mental residual functional capacity finding; and

3.  Substantial evidence exists in the record to support the Commissioner's finding that Collins was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Collins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioners decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     August 5, 2022.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE